IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 7, 2008

Charles R. Fulbruge III
Clerk

No. 08-20125

In Re:

ALISA DEAN; RALPH DEAN; RACY DONAIE; TYRONE SMITH;
RONALD DUHAN; MARY ANN DUHAN; MICHAEL JORDAN;
KELLY PORTER; HENRY RIVERA; MARIA RIVERA;
SANDRA THOMAS; CALVIN THOMAS,

Petitioners.

_____

Petition for Writ of Mandamus to
the United States District Court
for the Southern District of Texas

_____

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:

In the related criminal proceeding, twelve of the victims asked the district court to reject the plea agreement, alleging violations of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. The district court denied the request. See United States v. BP Prods. N. Am. Inc., No. H-07-434, 2008 U.S. Dist. LEXIS 12893 (S.D. Tex. Feb. 21, 2008). The victims petition for writ of mandamus with

the prayer that "[t]he decision of the district court should be reversed and the case remanded with instructions that the plea agreement [not be] accepted and the parties are permitted to proceed as they determineSSso long as it is in a way that respects crime victims' rights." We find a statutory violation but, for reasons we explain, we deny relief.

I.

The factual background and the judicial events that led to the mandamus petition are cogently set forth in the district court's Memorandum and Order, id. at *3-*18, in the criminal case. As there explained, an explosion at a refinery operated by the criminal defendant, BP Products North America Inc. ("BP"), killed fifteen and injured more than 170. Extensive civil litigation ensued.

The Department of Justice investigated the possibility of federal criminal violations. Before bringing any charges, the government, on October 18, 2007, filed a sealed ex parte motion for "an order outlining the procedures to be followed under the [CVRA]." The government announced that a plea agreement was expected to be signed in about a week and that because of the number of victims, "consulting the victims prior to reaching a plea agreement would not be practicable" and that notifying the victims would result in media coverage that "could impair the plea negotiation process and may prejudice the case in the event that no plea is reached."

As explained in the district court's order, the government, in its sealed ex parte motion, made specific recommendations for how the court should fashion a "reasonable procedure" under the CVRA's multiple crime victim exception. The district court, per an order signed by a district judge who had been assigned to the case in its status as a miscellaneous matter, see id. at *4 n.1, responded with impressive speed, issuing on that same day a sealed order finding that notification to victims in advance of the public announcement of a plea

agreement was impracticable because of the "large number of victims" and because, on account of the extensive media coverage, "any public notification of a potential criminal disposition resulting from the government's investigation [of the] explosion would prejudice [BP] and could impair the plea negotiation process and may prejudice the case in the event that no plea is reached." The ex parte order prohibited the government from notifying victims of a potential plea agreement until one had been executed; it directed that once an agreement had been signed, the government "shall provide reasonable notice to all identifiable victims and afford the victims the rights set forth [in the CVRA] prior to actual entry of the guilty plea . . . ."

The government filed the criminal information under seal on October 22. Two days later, the government and BP signed the plea agreement. The next day, the information was unsealed, and the plea agreement was announced. The government mailed three notices to the victims, in November and January, advising of scheduled proceedings and of their right to be heard. On November 20 and 23, various victims moved to appear and asked that the plea agreement be rejected or at least that the court handling the criminal matter require a presentence report.

After two district judges had declared themselves recused, the matter was permanently assigned, as a criminal matter, to the judge who entered the February 21 order that is the subject of this mandamus petition. Some victims appeared through counsel at a status conference on November 28 and presented their opposition to the plea agreement; 134 of them filed victim impact statements.

BP pleaded guilty at a hearing on February 4. All victims who wished to be heard, personally or through counsel, were permitted to speak. The attorneys reiterated the victims' request that the court reject the plea agreement on the basis of the CVRA violations alone; the district court reserved decision on the

victims' other challenges to the plea agreement. As the district court describes it, "the victims focused on three challenges: the fine was too low; the probation conditions were too lenient; and certain CVRA requirements had been violated." BP Prods., 2008 U.S. Dist. LEXIS 12893, at *15. The victims and their attorneys supplemented their appearances at the hearing with substantial post-hearing submissions.

On February 21, the district court entered the above-cited order, denying the victims' request that the court reject the plea agreement. Feeling aggrieved by the order, the victims filed the instant mandamus petition on February 28. Also on that date, a panel of this court, in compliance with the requirement of 18 U.S.C. § 3771(d)(3) that we act within seventy-two hours, entered an order granting the mandamus petition in part: It directed the district court to take no further action to effect the plea agreement, pending further order and awaiting additional briefing.

## II.

The parties dispute the standard of review. The victims assert that despite the fact that the CVRA states that "[i]f the district court denies the relief sought [by a victim], the movant may petition the court of appeals for a writ of mandamus," 18 U.S.C. § 3771(d)(3), the ordinary appeal standards (instead of the stricter standards for obtaining a writ of mandamus) apply. Two circuits agree with the victims. See Kenna v. United States Dist. Court, 435 F.3d 1011, 1017 (9th Cir. 2006); In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 563 (2d Cir. 2005).

The Tenth Circuit, however, taking the view that "[m]andamus is a well worn term of art in our common law tradition," most recently has held that mandamus standards apply. In re Antrobus, 519 F.3d 1123, 1127 (10th Cir. 2008) (per curiam) (on petition for rehearing and rehearing en banc). We are in accord

with the Tenth Circuit for the reasons stated in its opinion.

## III.

### A.

We have carefully examined the pleadings, the thorough order of the district court, and the applicable law. We conclude that although the district court, with the best of intentions, misapplied the law and failed to accord the victims the rights conferred by the CVRA, the mandamus standard is not satisfied.

A writ of mandamus may issue only if (1) the petitioner has "no other adequate means" to attain the desired relief; (2) the petitioner has demonstrated a right to the issuance of a writ that is "clear and indisputable;" and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is "appropriate under the circumstances." In re United States, 397 F.3d 274, 282 (5th Cir. 2005) (quoting Cheney v. United States Dist. Court, 542 U.S. 367, 380-81 (2004)). We need not decide whether the first two prongs are met because, for prudential reasons, a writ of mandamus is not "appropriate under the circumstances."

### B.

With due respect for the district court's diligent efforts to do justice, we conclude that, under the specific facts and circumstances of this case, it was contrary to the provisions of the CVRA for the court to permit and employ the ex parte proceedings that have taken placeSSproceedings that have no precedent, as far as we can determine. To obtain the order, the government filed only a brief ex parte statement, apparently with a proposed order. The fact of the ex parte motion and order was compounded by the intentional delay of three months before the victims were notified that the ex parte proceeding had occurred.

The district court acknowledged that "[t]here are clearly rights under the

CVRA that apply before any prosecution is underway." BP Prods., 2008 U.S. Dist. LEXIS 12893, at *36. Logically, this includes the CVRA's establishment of victims' "reasonable right to confer with the attorney for the Government." 18 U.S.C. § 3771(a)(5). At least in the posture of this case (and we do not speculate on the applicability to other situations), the government should have fashioned a reasonable way to inform the victims of the likelihood of criminal charges and to ascertain the victims' views on the possible details of a plea bargain.

The district court's reasons for its ex parte order do not pass muster. The first consideration is the number of victims. The government and the district court relied on the provision of the CVRA that states that "[i]n a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). Here, however, where there were fewer than two hundred victims, all of whom could be easily reached, it is not reasonable to say that notification and inclusion were "impracticable." There was never a claim that notification itself would have been too cumbersome, time-consuming, or expensive or that not all victims could be identified and located; the government itself suggested a procedure whereby the victims would be given prompt notice of their rights under the CVRA after the plea agreement was signed.

The real rub for the government and the district court was that, as the district judge who handled the ex parte proceeding as a miscellaneous matter reasoned, "'[d]ue to extensive media coverage of the . . . explosion . . ., any public notification of a potential criminal disposition resulting from the government's investigation . . . would prejudice BP . . . and could impair the plea negotiation process and may prejudice the case in the event that no plea is reached.'" BP Prods., 2008 U.S. Dist. LEXIS 12893, at *6-*7. In making that observation, the

court missed the purpose of the CVRA's right to confer. In passing the Act, Congress made the policy decisionSSwhich we are bound to enforceSSthat the victims have a right to inform the plea negotiation process by conferring with prosecutors before a plea agreement is reached. That is not an infringement, as the district court believed, on the government's independent prosecutorial discretion, see id. at *37-*38; instead, it is only a requirement that the government confer in some reasonable way with the victims before ultimately exercising its broad discretion.

It is true that communication between the victims and the government could, in the district court's words, "impair the plea negotiation process," id. at *7, if, by using the word "impair," the court meant that the views of the victims might possibly influence or affect the result of that process. It is also true (and we cannot know whether the court considered) that resourceful input from victims and their attorneys could facilitate the reaching of an agreement. The point is that it does not matter: The Act gives the right to confer. The number of victims here did not render notice to, or conferring with, the victims to be impracticable, so the victims should have been notified of the ongoing plea discussions and should have been allowed to communicate meaningfully with the government, personally or through counsel, before a deal was struck.

## C.

As announced above, we decline to issue a writ of mandamus in this specific situation, because a writ is not "appropriate under the circumstances." In re United States, 397 F.3d at 282. The unfortunate fact is that the plea agreement was reached without the victims' being able to participate by conferring in advance. On the other hand, as we have explained, the victims were notifiedSS albeit much too late in the processSSand were allowed substantial and meaningful participation at the February 4 hearing. As the district court recounted,

the court heard from all those present who wanted to speak, wheth-
er represented by counsel or not and whether they had previously
indicated an intent to appear or not. Ten individuals spoke in open
court. The lawyers representing the victims presented arguments
on the asserted grounds for asking the court to reject the proposed
plea agreement . . . .

At the conclusion of the . . . hearing, the victims' counsel asked
for, and were granted, an opportunity to submit additional briefing
focused on specific legal issues . . . . The court also granted the vic-
tims' request to delay filing their brief until the transcript was pre-
pared and allowed the government and BP . . . to file responsive
briefing.

BP Prods., 2008 U.S. Dist. LEXIS 12893, at *13-*16 (footnote omitted).

The district court, therefore, has the benefit of the views of the victims who chose to participate at the hearing or by their various filings. The victims do have reason to believe that their impact on the eventual sentence is substantially less where, as here, their input is received after the parties have reached a tentative deal. As we have explained, that is why we conclude that these victims should have been heard at an earlier stage. We are confident, however, that the conscientious district court will fully consider the victims' objections and concerns in deciding whether the plea agreement should be accepted.

The decision whether to grant mandamus is largely prudential. We conclude that the better course is to deny relief, confident that the district court will take heed that the victims have not been accorded their full rights under the CVRA and will carefully consider their objections and briefs as this matter proceeds.

The petition for writ of mandamus, to the extent that it has not already been granted in part, is DENIED.