REVISED October 14, 2008

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-30934

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

REGINALD B. ATKINS,

Defendant - Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
5:06-CR-50081-ALL

Before GARZA and DENNIS, Circuit Judges, and MILLS, District Judge.[*]

PER CURIAM:[**]

The Government appeals the district court's pre-trial order suppressing in the "interest of justice" certain statements that the defendant, Reginald B. Atkins, allegedly made to law enforcement officers, but which the defendant

---

[*] Chief District Judge of the Northern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

could not subsequently recall as a result of amnesia. For the following reasons, we REVERSE and REMAND.

The defendant, Reginald B. Atkins, was indicted and arrested for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). After his arrest, while on bond, the defendant suffered an episode of hypoxic encephalopathy, resulting in a medically verifiable brain injury. As a result of the defendant's condition, the defendant was unable to recall certain events leading up to his arrest. Specifically, the defendant did not recall inviting three officers into the house in which he was residing, leading the officers to a garage filled with guns, and then, when referring to a case with two rifles in it, telling the officers: "Those two are mine," or "Those are my two sniper rifles." The defendant also did not recall telling the officers, who informed the defendant that they were investigating a report of a missing shotgun, that "They're over there" in referring to the guns located in the garage.[1]

A magistrate judge conducted a competency hearing to determine whether the defendant could obtain a fair trial despite his amnesia. The magistrate judge found that the defendant's amnesia was real, but nonetheless concluded that the defendant was competent to stand trial. The magistrate judge acknowledged that the defendant's statements presented a "real challenge," but observed that "the fact that he does not remember the statement does not, standing alone, render the statement inadmissible. The District Judge will be able to deal with any issues regarding the statement in the context of the actual trial."

The district court then held a pre-trial conference, in which the court sua sponte expressed its intent to suppress the defendant's statements. The

---

[1] The defendant's mother, Wanda Lacy, called the police to report that a shotgun owned by her late husband was missing from a house she owned, but in which her son, the defendant, was residing. Her call is what led the police to the defendant.

defendant made an oral motion to suppress the statements, which the district court granted, "[o]n the grounds that he cannot remember giving the statement and cannot question how it was given, when it was given, and whether it was given, and the nuances thereunder."

The Government moved the district court to reconsider its ruling and requested an evidentiary hearing on the defendant's motion to suppress. The district court held a suppression hearing in which the three law enforcement officers and the defendant's mother testified. After the hearing, at the district court's request, the Government filed a letter stating that it had no evidence in the case beyond the defendant's statements and his physical possession of the rifles.

The district court issued a written order. In the order, the district court concluded, consistent with the magistrate judge's report and recommendation, that the defendant was competent to stand trial. Nonetheless, the district court held that

> in light of the evidence before this Court regarding Atkins' lack of memory surrounding his statements to [the officers] on February 25, 2005, related to Atkins' ownership of the two sniper rifles, and Atkins' inability to contradict the testimony of those officers or assist counsel in his defense as it relates to his making those statements, the interest of justice compels suppression of those statements.

Pursuant to 18 U.S.C. § 3731,[2] the Government appealed the district court's suppression order.

---

[2] Section 3731 provides in relevant part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The parties debate the applicable standard of review. The Government argues that the district court's suppression order is most analogous to an application of the exclusionary rule based upon a violation of the defendant's constitutional rights under the Fourth or Fifth Amendment. As such, the Government argues that the court should review the district court's findings of fact for clear error, but that the court should review de novo whether the district court properly applied the exclusionary rule. See, e.g., United States v. Tompkins, 130 F.3d 117, 119–20 (5th Cir. 1997) ("With regard to ruling on a motion to suppress, we review the district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo." (internal quotation marks omitted)). On the other hand, the defendant argues that the district court's decision was an evidentiary ruling, which we should review only for an abuse of discretion. See United States v. Crawley, 533 F.3d 349, 353 (5th Cir. 2008) ("Evidentiary rulings are reviewed for an abuse of discretion."). We decline to resolve this dispute because reviewing the district court's order under either standard, we conclude that the district court erred in suppressing the defendant's statements by invoking the "interest of justice."

The district court's order articulated no legal authority for suppressing the defendant's statements. We cannot countenance the district court's exercise of unbridled discretion to admit or exclude evidence based on the district court's unelaborated invocation of the "interest of justice." See generally In re Dean, 527 F.3d 391, 394 (5th Cir. 2008) ("With due respect for the district court's diligent efforts to do justice, we conclude that, under the specific facts and circumstances of this case, it was contrary to the provisions of the CVRA for the court to permit and employ the ex parte proceedings that have taken place-proceedings that have no precedent, as far as we can determine."). The interest of justice guides us always in performing our duties. Nonetheless, reliance on the "interest of

4

justice," without more, does not afford the district court any basis to ignore the Federal Rules of Evidence or to disregard established precedent defining the contours of the exclusionary rule. Because the district court's only basis for suppressing the defendant's statements—invocation of the "interest of justice"—is insufficient to support that ruling, we REVERSE and REMAND.[3]

---

[3] We express no opinion on the district court's competency ruling. The district court is free to reconsider or not reconsider its competency decision on remand. Furthermore, we reverse only the district court's exclusion of the evidence based on the court's invocation of the "interest of justice," as that was the only basis for the court's decision.

DENNIS, Circuit Judge, specially concurring.

I fully concur in the majority opinion reversing the suppression of the defendant's statements and remanding to the district court. I write separately to note that the defendant's competency appears to present serious constitutional issues which the district court may reconsider.

The defendant's amnesia may prevent him from receiving a fair trial because of the particular context of this case, and a brief overview of the facts is warranted. At the time of his arrest the defendant was living in a house owned by his mother, who resided elsewhere, and which had previously been occupied by his mother and step-father. On February 24, 2005, Wanda Lacy, the defendant's mother, brought her grandson with her to the house in which the defendant was living in order to take an inventory of a collection of guns left there by her late husband. Lacy and her grandson did not believe the defendant to be home. As they were packing up the guns, however, the defendant appeared and accused them of trying to steal the guns. Lacy was frightened, and she and her grandson left the house without taking any of the firearms. According to Lacy, she then called the Caddo Parish Sheriff's Office and asked for assistance removing the guns, reported one particular gun as missing, and told the police that Atkins was a convicted felon. Later that night, according to Lacy, Lacy's grandson told her he had seen the supposedly missing gun in the garage at the residence occupied by the defendant, and she informed the police that the gun had been located.

The police, however, claim Lacy never told them that the defendant was a convicted felon. Instead, they assert that after Lacy called to report the gun missing they went to the house to speak to the defendant but did not find him there. The next day they returned, despite Lacy's testimony that she had reported that the gun had been found, and according to their testimony they found the defendant, who told them he had the missing gun and that it was in

the garage. According to the police the defendant escorted them to the garage, gestured at several gun cases, and told them the missing gun was in one of them. The police testified that as they began opening the cases they discovered two additional guns; according to the police the defendant then said one of the following things: "Those two are mine," "Those two rifles are mine," or "Those are my two sniper rifles" (the officers testified slightly differently on this score). The police then called Lacy to notify her that they had found the gun and returned to the police station, where they claim to have discovered for the first time that the defendant was a convicted felon. They then obtained an arrest warrant for the defendant and a search warrant for the house.

The police attempted unsuccessfully to serve the warrant several times over the following week - eventually, on March 2, 2005, the day the warrant expired, the police informed Lacy that they would have to break into her house to execute the search warrant. Lacy volunteered to bring the defendant to the house to avert this possibility. When Lacy and the defendant arrived the police arrested the defendant and executed the search warrant, seizing 25 guns including the two sniper rifles defendant had allegedly claimed as his own during his first encounter with the police. The defendant was released on bond, and two months later, on April 25, 2005, he was admitted to the hospital for hypoxic encephalopathy (lack of oxygen supply to the brain), sepsis, and acute respiratory, renal and liver failure. The defendant was in the hospital for several weeks, some of which were spent in a drug-induced coma. According to the defendant's doctor, Dr. Craig L. Miller, the illnesses and treatment resulted in extensive brain damage.

This brain damage gave rise to the defendant's amnesia which is at the center of this case. At a competency hearing held before a magistrate judge prior to trial, experts for both the government and the defense testified that while the defendant could rationally understand the charges and proceedings against him,

his brain injuries had left him amnesiac as to the events leading to his arrest. The government's expert, Dr. Robert Johnson, a forensic neuropsychologist employed by the Federal Bureau of Prisons in Forth Worth, Texas, testified that the defendant had an "amnesic disorder" that prevented him from remembering the events leading to his arrest. Although Dr. Johnson testified he believed the defendant was competent to stand trial because he understood the charges against him, the possible punishments, and the nature of the court proceedings, but he admitted that it was "a challenge" to see how the defendant could assist his lawyer in his own defense, ROA at 147, since "if he has no memory, he's not going to be able to respond to [questions about the day he was arrested]," ROA at 148. Dr. Seiden, a forensic psychiatrist who testified for the defense, testified that the defendant was amnesic and that the question was not so much whether he was competent, in terms of understanding the process, the parties, and the consequences of the charges, but whether he could receive a fair trial given his amnesia. Dr. Seiden agreed with Dr. Johnson that "If you ask [the defendant] questions or if he has to challenge statements made during the time of his amnesia, he would not be able to give you information." ROA at 156. Dr. Seiden also testified that the defendant's amnesia was not likely to improve over time.

Despite this testimony the magistrate judge found that the defendant was competent to stand trial because, apart from his memory deficit, he "had a good understanding of the charges against him and the roles of the various participants in court proceedings." ROA at 115. The magistrate judge also found that the defendant could receive a fair trial despite his amnesia because the issues in the case were "whether Defendant possessed the guns and whether he was a convicted felon," and these issues could be reconstructed based on the government's evidence and the testimony of the defendant's mother, who was involved in some of the events leading up to his arrest. ROA at 116. The district

court adopted these recommendations but suppressed the statements made by the police about the defendant's claims of ownership of the guns.

The majority opinion fully and correctly addresses the suppression of these statements in the "interests of justice." I write separately here to explain my view that the magistrate judge incorrectly applied the competency standard and the case law in finding that the defendant was competent and could receive a fair trial despite his amnesia as to the events leading to his arrest.

Competency is an important component of due process in a criminal trial, and, as this court has recognized, also implicates "an accused's Fifth and Sixth Amendment rights to a fair trial and effective assistance of counsel." United States v. Swanson, 572 F.2d 523, 526 (5th Cir. 1978). As "an essential consideration in the fairness of the trial," it may be evaluated or reevaluated "at any time during or after the trial . . .with or without a motion by counsel." Id. at 526 n.3. See also 18 U.S.C. § 4241(a) (competency can be evaluated on motion of the government or defendant or on court's own motion at any time between commencement of a prosecution and sentencing); United States v. White, 887 F.2d 705, 709 (6th Cir. 1989) ("It is also clear that [18 U.S.C. § 4241] in no way limits the court to a single inquiry into a defendant's competency. Indeed § 4241 contemplates inquiry over a wide period of time . . ."). Further, a magistrate judge's prior determination of competency does not prevent the parties or the court from requesting or conducting further competency proceedings at trial. White, 887 F.2d at 709. Thus the district court in this case has the authority - even the responsibility - to reexamine competency on remand. 18 U.S.C. § 4241(a) ("The court . . . shall order [a competency] hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent . . . .").

A defendant must be declared incompetent to stand trial if the court finds him to be "presently insane or otherwise so mentally incompetent that he is unable to understand the proceedings against him or properly assist in his own defense." 18 U.S.C. § 4241(d). The Supreme Court has interpreted this test to be an inquiry into whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Swanson, 572 F.2d at 525-26 (referencing Dusky v. United States, 362 U.S. 402 (1960)).

Although in most cases the competency inquiry focuses on whether the defendant is able to understand the charges, the proceedings, and the roles of the various players in the judicial process, a defendant is incompetent if he cannot satisfy either part of the standard. "To show a substantive violation [of defendant's due process rights], an accused must prove an inability either to comprehend or participate in the criminal proceedings." Holmes v. King, 709 F.2d 965, 967 (5th Cir. 1983) (emphasis added). In ordinary circumstances a defendant who cannot understand the charges, proceedings, or judicial process is unlikely to be able to participate in his defense, and vice versa. It is only in the rare case, as here, that the two parts of the test do not automatically follow from one another. Nevertheless, the fact that the test is often collapsed does not mean that the two parts are not still independent requirements.

In the case of an amnesiac defendant who is otherwise generally mentally sound, it is the second part of the test - the requirement that the defendant be able to participate in his own defense - that is most relevant. This circuit has dealt with this rare situation before. In United States v. Swanson, one of the defendants to an extortion charge moved for dismissal on the grounds that his amnesia as to the events in question prevented him from participating in his own defense and receiving a fair trial. Swanson, 572 F.2d at 525. In that case,

10

this court indicated that a criminal defendant's amnesia is not a per se bar to trial, but instead triggers a case-by-case fact-based analysis. Id. at 526. The inquiry into an amnesiac defendant's competency proceeds on two levels. At the first, "subjective" level, the court considers the defendant's ability to participate in his own defense. The factors at this stage include (1) the defendant's ability to take the stand on relevant matters other than those which he cannot remember, (2) whether the defendant has any other conditions that hinder his ability to participate in his own defense, (3) whether a continuance would improve the chances of a fair trial or make a fair trial more difficult, and (4) whether the amnesia appears to be real or feigned. Id. at 526-27. At the second, "objective" level, the court considers whether the defendant can receive a fair trial despite the challenges his amnesia may raise when it comes to assisting in his own defense. Factors at this stage include (1) whether the crime and the defendant's whereabouts can be reconstructed without his testimony, (2) the strength of the case against the defendant, and (3) whether some of the disadvantage could be mitigated by giving the defendant access to the government's files. Id. at 527.

The record in this case demonstrates that the defendant's amnesia may prevent him from receiving a fair trial. At the subjective level, only the first factor applies here. The defendant cannot take the stand on related relevant matters because there are no other relevant matters - the only relevant matters are precisely those which he cannot remember, viz., what, if anything, he said to the police about the guns that were found in his mother's house.

Both the first and second factors of the objective prong illustrate the defendant's disadvantage for the same reasons. There is no way to reconstruct the scene accurately, through the time-tested method of the adversarial process, without his testimony. Moreover, as the government has admitted, there is no evidence supporting the charge of possession of a firearm except the testimony

by the police officers as to the defendant's statements. ROA at 208. The government has no evidence that the defendant purchased the guns, id., and thus no way to prove ownership or possession apart from the alleged statements. The fact that they were in the house belonging to his mother in which he was living is not dispositive, since his step-father, who lived there previously, had owned and kept a large collection of guns which remained in the house after his death - inventorying those guns was the reason the defendant's mother went over to the house on February 24 in the first place.

In addition, defendant's counsel has no way of knowing how to cross-examine the police officers since his client has no memory of the events in question. The government's expert admitted as much at the competency hearing. ROA at 148. This case turns on a credibility determination among competing witnesses - or rather, it would if the defendant could testify as to anything that happened. The fact that the defendant's mother's testimony differs from that of the police officers in troubling ways (she testifies that she told them he was a convicted felon, the police say they had no idea; she testifies she told them the gun had already been found before they went looking for the defendant, the police went to look for the defendant anyway despite allegedly not knowing he was a convicted felon) only emphasizes the importance that the defendant's testimony would have, were he able to give it. Given these facts, the government's case is extremely weak.

Finally, with regards to the third factor, this disadvantage cannot be mitigated by giving the defendant access to the government's files. The government has conceded there is no evidence beyond the statements of the police officers.

The magistrate judge who determined the defendant's competency relied heavily on United States v. Doke, 171 F.3d 240 (5th Cir. 1999), in which this court found the district court did not err by finding a defendant competent to

stand trial despite his claims of amnesia as to the events leading to his arrest and conviction for financial fraud. Doke, however, is distinguishable from this case on several important points. First, in Doke, the defendant claimed to suffer some "memory lapses" but there was no agreement, as there is here, on the severity of the problem. The government expert in that case, in fact, believed that the defendant's "overall ability to utilize his memory functions is still adequate and consistent with what might be expected from someone at his intellectual level," Doke, 171 F.3d at 248, and testified that "the defendant "remembers a great deal, is aware of his intentions and plans concerning this business at that time, and can even be reminded and sometimes remember details if he is provided with helpful information." Id. In its analysis in Doke, this court noted particularly, in reference to how the amnesia might disadvantage the defendant in assisting in his own defense, that access to government files about the financial transactions could fill in the defendant's memory, and that "someone with no mental defects likely would have had reduced memory of ten-year-old financial transactions." Id.

The facts in this case are very different. First, both the government and the defense experts agree that the defendant has complete or near complete amnesia about the events surrounding his arrest and is unlikely to recover from it. The defendant has no memory of what happened, and cannot remember anything either about his general disposition at the time or the precise events that took place. As discussed earlier, the government files provide no additional information. The magistrate judge, in comparing Doke to the instant case, seemed to believe that the fact that Doke was a complicated financial case meant that amnesia would be more of a problem in Doke, and thus that since the defendant in Doke had been held competent the defendant here must be competent too. ROA at 116 ("This is not a complicated fraud case which would require Defendant to explain or justify detailed transactions that took place

years earlier"). But, in fact, it is the complex financial nature of Doke that made the defendant's amnesia less problematic there than it is here. Financial transactions are the kind of evidence that appear in official records and can be consulted by either party in preparation for trial - they are, to some extent at least, verifiable facts. Their complexity is not the crucial factor - what is relevant is that the defendant in Doke was in the position of having a sense of his general approach to his business but not being able to remember every detail of complicated transactions he made a decade prior to his trial. The defendant here has no memory of anything that happened around his arrest, and whatever did happen is not an independently verifiable recorded fact. If the government had paperwork showing the defendant owned the guns that would be more analogous to Doke - but as it has admitted, it has no such proof. Any statements of ownership or non-ownership that the defendant may or may not have made are not verifiable apart from eyewitness testimony.

The magistrate judge also noted that since the defendant's mother was involved in some of the incidents leading to his arrest she could testify to fill in the gaps. ROA at 116. But she was not present during the crucial conversation in which the defendant allegedly claimed ownership of the guns. And to the extent she has testified, as explained above, her testimony differs from that given by the police, suggesting again that a credibility determination is essential to this case and thus that the defendant's testimony would be essential as well. For all these reasons, the defendant's amnesia may prevent him from receiving a fair trial.