# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-11415

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

JOYCE SIMMONS, ET AL

Defendants

United States Court of Appeals
Fifth Circuit

**FILED**

November 10, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-66

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:*

This civil restitution case brought by the United States comes to us on interlocutory appeal or, alternatively, on petition for mandamus. In a previous action, Defendant Joyce Simmons was convicted of preparation of false tax returns and, as part of her sentence, was ordered to pay over $28 million in criminal restitution to the Internal Revenue Service. The government brought the underlying action to enforce that judgment and to void allegedly fraudulent

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

transfers of property that threatened to interfere with its right to recovery. The complaint names five defendants: Joyce Simmons; Joyce's brother, Eugene Simmons; Joyce's daughter, D.M. (a minor); Kerry Lynn James, as natural parent of D.M.; and Wells Fargo Bank, which had its own lien on one of the properties at issue.

D.M. is currently unrepresented in this matter. James, as next friend of D.M., appeared pro se and filed an answer on behalf of D.M. After holding a hearing at which the district court questioned James, the court concluded "that James would not provide sufficient legal representation to D.M. . . . as her next friend or in any other capacity." The court further concluded "that for D.M. to be afforded adequate legal representation in this action, the court would be required to appoint an attorney as a guardian ad litem to represent her in defense of the claims being made against her." The court noted its disinclination to appoint a guardian *ad litem* for D.M. absent an assurance that the guardian *ad litem* would be appropriately compensated. The court stated that it "would expect [the government] to commit to make payment of such . . . fees and expenses."[1] Thus, on September 4, 2013, the court issued a stay, which was to remain in effect "until such time as the court has received satisfactory assurance from [the government] that a guardian ad litem appointed by the court . . . would be adequately compensated." The court cited a civil forfeiture case in which a similar situation arose and in which the government agreed to pay for a guardian *ad litem*.

The government then moved to lift the stay and to appoint pro bono counsel for D.M. The government explained that it did not have the statutory

---

[1] The district court noted, however, that "[s]uch a commitment . . . would not prevent [the government] from seeking an order requiring a defendant other than D.M. to reimburse [the government] for all or some part of whatever payment it might make for [such] fees and expenses."

authority to pay for a guardian *ad litem* in this circumstance, distinguishing the forfeiture case cited by the district court.  It also proposed several alternative solutions for funding the guardian *ad litem*—appointment of an attorney from the Northern District of Texas's Pro Bono Civil Panel, appointment of a pro bono attorney from the Family Court Services of Tarrant County, and the use of Criminal Justice Act ("CJA") funds to compensate an appointed attorney.  In an order denying the government's motion, the district court determined that it was required to appoint a guardian *ad litem* for D.M. pursuant to Federal Rule of Civil Procedure 17(c), rejected the government's suggested solutions, and rejected the notion that the government would be unable to pay for a guardian *ad litem*'s fees.  The district court therefore refused to lift the stay.

We must first address whether we have jurisdiction to hear this appeal. The government primarily contends that we have jurisdiction pursuant to the collateral order doctrine.  However, a prerequisite to jurisdiction under that doctrine is that the district court's order "'conclusively determine the disputed question.'" *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). It is not true, as the government asserts, that "[t]he district court's order conclusively determines that the government must fund" the guardian *ad litem*.  Rather, the district court only required that the government provide "satisfactory assurance" that the guardian *ad litem* would be adequately compensated.  Thus, the district court did not "conclusively determine" who would pay.

The government's alternative argument that a writ of mandamus is warranted has more merit. "A writ of mandamus may issue only if (1) the petitioner has no other adequate means to attain the desired relief; (2) the petitioner has demonstrated a right to the issuance of a writ that is clear and

indisputable; and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances." *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (internal quotation marks and citation omitted). "These hurdles, however demanding, are not insuperable." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004). We have held that "[m]andamus is appropriate to correct the grant of a stay which amounts to a clear abuse of discretion." *S. Pac. Transp. Co. v. San Antonio*, 748 F.2d 266, 270 (5th Cir. 1984). Indeed, although "mandamus is an extraordinary remedy, not to be granted lightly," it may be appropriate where "petitioners challenge . . . a stay, potentially of lengthy duration, [because] there is no interruption with ongoing proceedings below." *In re Ramu Corp.*, 903 F.2d 312, 317–18 (5th Cir. 1990).

Assuming, without deciding, that we have authority to issue a writ of mandamus, we nonetheless decline at this time to exercise our discretion to do so. *See In re Dean*, 527 F.3d at 394. We are confident that the district court will take the necessary steps to move this case forward. D.M. is unrepresented; thus, under Rule 17(c)(2), the district court must appoint a guardian *ad litem* or "issue another appropriate order" to protect her interests. Fed. R. Civ. P. 17(c)(2). Our decision in *Gaddis* outlines the discretion of the district court to decide whether a guardian *ad litem* is necessary and, if so, to appoint an appropriate guardian *ad litem*. *Gaddis v. United States*, 381 F.3d 444, 454–55 (5th Cir. 2004) (en banc). As to methods of compensation, we announced only the following:

> [U]nder Rule 17(c), the district courts have inherent authority and discretion to determine . . . [w]hether the compensation payable to the guardian *ad litem* will be treated (1) as a court cost to be taxable against the nonprevailing party or (2) as an expense to be payable out of any funds recovered by or payable to the minor or incompetent person on whose behalf the guardian *ad litem* was appointed.

*Id*. at 455.

No. 13-11415

In light of this absence of controlling authority or guidance for *interim* payments,[2] the district court and the government may profitably explore various options. Any guardian *ad litem* whom the district court appoints might serve pro bono pending the outcome of the litigation, at which time the guardian *ad litem*'s fees may be taxed against the nonprevailing party under Federal Rule of Civil Procedure 54(d). *See Gaddis*, 381 F.3d at 459. The guardian *ad litem* can advise D.M. and the district court about the need for D.M. to have separate counsel, and could retain counsel for D.M. and arrange for payment from the proceeds of the property, or locate pro bono counsel, or assist in finding another solution. *See Gibbs v. Gibbs*, 210 F.3d 491, 506 (5th Cir. 2000) ("The guardian *ad litem* is frequently not an attorney and if legal services are required, he must seek and employ counsel." (internal quotation marks and citations omitted)). Alternatively, D.M.'s representative may function both as a guardian *ad litem* and as an attorney *ad litem*, though only his fees for work as a guardian *ad litem* will be taxable as costs under Rule 54(d). *See Gaddis*, 381 F.3d at 459 ("[W]here the same person acts in the capacities as both a minor's guardian *ad litem* and as his attorney *ad litem*, only the person's expenses in the former role are taxable as costs under Fed. R. Civ. P. 54(d)." (internal quotation marks and citations omitted)).

We therefore DENY the petition for writ of mandamus without prejudice to the government's right to file another petition should the current impasse fail to be resolved, either leading to an indefinite stay or, oppositely, leading to

---

[2] The dissent faults us and the district court for failing to identify caselaw on payment for guardians *ad litem*, but to grant mandamus, even if a payment order were before us, the burden is on petitioner to show clear and indisputable error. *See In re Dean*, 527 F.3d at 394; *see generally Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004) (mandamus, as "one of the most potent weapons in the judicial arsenal," must be "reserved for really extraordinary causes . . . amounting to a judicial usurpation of power or a clear abuse of discretion;" burden is on petitioners to show "clear and indisputable" entitlement) (internal quotation marks and citations omitted).

No. 13-11415

a payment order which the government demonstrates exceeds the court's authority.  Any future petitions for writ of mandamus will be directed to this panel.

No. 13-11415

KING, Circuit Judge, dissenting:

I respectfully dissent. We should grant the Government's petition for a writ of mandamus.

The district court has effectively imposed an indefinite stay of this matter, halting proceedings until the Government agrees to pay for its adversary's guardian *ad litem*.[1] It has refused to lift the stay in spite of the Government's consistent position that it lacks the statutory authority to make such a payment. The district court cited no authority for the proposition that the Government can agree to pay for a guardian *ad litem* in this situation. Instead, the district court relied on the Government's agreement to pay guardian *ad litem* fees in a separate case involving "forfeiture of real property in which . . . minors had legal interests." But, as the Government pointed out below, there is a fund specifically allocated for such expenses in civil forfeiture cases. *See* 28 U.S.C. § 524(c)(1)(A) (establishing fund for "the payment . . . of any . . . necessary expense incident to the . . . forfeiture . . . of . . . property"). Neither the district court nor the majority has identified any provision allowing the Government to expend funds on guardian *ad litem* fees in non-forfeiture cases such as the one at hand. *See* 31 U.S.C. § 1341(a)(1)(A) ("An officer or employee of the United States Government . . . may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation . . . .").[2]

---

[1] The district court purported to allow the Government to propose alternative solutions for compensating the *ad litem*. However, the court discarded the Government's various proposals—for example, the appointment of an attorney from the Northern District of Texas's Pro Bono Civil Panel or the appointment of a pro bono attorney from the Family Court Services of Tarrant County—without meaningfully explaining why the proposed solutions were inadequate. I cannot believe that in the Dallas-Fort Worth area there is no competent attorney willing to take on the representation either pro bono or with the possibility of being paid from the proceeds of sale of some of the property at issue.

[2] This issue is complicated further by the district court's insistence that the guardian *ad litem* in this case function at least in part as an attorney—by, for example, conducting

7

No. 13-11415

We therefore have the authority to issue a writ of mandamus which, as the majority notes, is warranted where "petitioners challenge . . . a stay, particularly of lengthy duration." *In re Ramu Corp.*, 903 F.2d 312, 317–18 (5th Cir. 1990) ("[D]iscretionary stays . . . will be reversed when they are immoderate or of an indefinite duration." (internal citation and quotation marks omitted)).  On the assumption that the court has the power to issue a writ, the majority nonetheless exercises its discretion to deny the petition.  In so doing, the majority only invites the district court to prolong the current impasse.  Based on my review of the record, I do not share the majority's confidence that this impasse will be resolved absent our intervention.  In the meantime, the Government represents that "[l]ocal government entities have commenced various proceedings to collect delinquent taxes on the parcels of real property at issue" and "[i]f the taxes are not paid, such proceedings could culminate in a foreclosure sale of the properties."  Time is therefore of the essence.  Accordingly, I would grant the Government's petition and issue a writ of mandamus ordering the district court to lift the stay and appoint a guardian *ad litem* to represent D.M.—as the district court and the majority agree is necessary.  For these reasons, I respectfully dissent.

---

"[l]egal research," and "fil[ing] . . . motions."  As the Government points out, "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney's fees." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (noting that such waivers "must be construed strictly in favor of the sovereign" (internal citation and quotation marks omitted)).