**\*AMENDED DLD-160**                                              **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1370

_____

In re:  TOBIA IPPOLITO,
                                                    Petitioner

_____

On a Petition for Writ of Mandamus from the
United States District Court for the District of New Jersey
(Related to D.N.J. Civ. No. 2:19-cv-19818)

_____

Submitted Pursuant to Rule 21, Fed. R. App. P.
April 9, 2020

Before:  RESTREPO, PORTER and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 30, 2020)

_____

OPINION*

_____

PER CURIAM

        Tobia Ippolito has filed a petition for a writ of mandamus.  The petition will be

denied.

_____

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

I.

Ippolito built a "multi-million dollar estate" after climbing the corporate ladder.[1] He retired at age 46.

A reversal of Ippolito's fortunes coincided with his divorce. He says he became "absolutely insolvent due to restrictions ordered by the state court in his matrimonial dissolution." The filing of a Chapter 7 voluntary petition for bankruptcy relief followed.[2]

Ippolito's divorce and bankruptcy cases have spawned extensive, multi-fora litigation.[3] Most pertinent here, Ippolito filed a complaint against the District of New Jersey's United States Attorney (Craig Carpenito), the Director of the United States Trustee Program (Clifford J. White III), and the top prosecutor in Essex County (Theodore N. Stephens II).[4] The complaint claimed that White and Carpenito failed to conduct investigations under 18 U.S.C. § 3057 into fraud afoot in Ippolito's bankruptcy proceeding, and failed to honor Ippolito's rights under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. The complaint also claimed that Stephens failed to perform his prosecutorial duties vis-à-vis crime victims, under state statutory law and the New Jersey Constitution.

---

[1] Background info has been culled from Ippolito's petition, the exhibits thereto, and public court filings. Unless otherwise noted, any quoted material is from Ippolito's petition. None of what is said in this Opinion should be construed as a finding of fact.
[2] See In re Ippolito, BK No. 16-bk-10856, ECF 1 (D.N.J. Bankr. Jan. 18, 2016).
[3] See, e.g., Ippolito v. Ippolito, 126 A.3d 889 (N.J. Super. Ct. App. Div. 2015).
[4] See Ippolito v. Carpenito, DC Civ. No. 2:19-cv-19818, ECF 1 (D.N.J. Nov. 4, 2019).

After permitting Ippolito an opportunity to amend his complaint, the District Court dismissed the case with prejudice by order entered on February 6, 2020.  Ippolito did not immediately file a Notice of Appeal.  Instead, he filed this mandamus petition.[5]

The mandamus petition seeks three kinds of relief:  (1) an order of this Court "reversing" the District Court's February 6, 2020 order ("Request #1"); (2) an order granting Ippolito status as a "crime victim" under the CVRA ("Request #2"); and (3) "in the alternative," an order permitting Ippolito to file a second amended complaint and a motion for pro bono counsel in the above-referenced District Court case ("Request #3").

II.

We first address Request #2.  Ippolito seeks an order classifying him as a "crime victim" under the CVRA.[6]  Enacted in 2004, the CVRA confers on victims of crimes the rights to, inter alia, reasonable protection from the accused, to notice of (and participation

---

[5] While this petition was pending, the District Court issued an opinion and order denying Ippolito's apparently unresolved motion for reconsideration.  Arguing that the District Court could not have entered the order absent this Court's invitation, under Fed. R. App. P. 21(b)(4), Ippolito filed an 'objection' by way of a letter to this Court.  Ippolito's 'objection' is meritless:  Rule 21(b)(4) governs the procedure for trial-court judges to respond to mandamus petitions, and here the District Court was, by contrast, responding to a motion for reconsideration.

[6] Mandamus is a drastic remedy available only in the most extraordinary of circumstances.  See In re Diet Drugs Prods. Liab. Litig., 418 F.3d 372, 378 (3d Cir. 2005)  But a more lenient standard of review arguably applies where mandamus is properly sought to vindicate the denial of rights under the CVRA.  See 18 U.S.C. § 3771(d)(3); Kenna v. U.S. Dist. Court, 435 F.3d 1011, 1017 (9th Cir. 2006); In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 563 (2d Cir. 2005).  But see In re Dean, 527 F.3d 391, 393 (5th Cir. 2008) (per curiam) (applying traditional mandamus standard); In re Antrobus, 519 F.3d 1123, 1127 (10th Cir. 2008) (per curiam) (same); United States v. Monzel, 641 F.3d 528, 533 (D.C. Cir. 2011) (same).  Given our ultimate disposition, we need not determine in this case what standard of review applies to CVRA-governed mandamus petitions.

in) relevant court proceedings, to confer with government counsel, and to full and timely restitution as provided in law. See 18 U.S.C. § 3771(a).

The term "crime victim" is defined by statute as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2). Here, we have not been presented with evidence that anyone other than Ippolito has concluded that he may be the victim of a "Federal offense"; and one does not acquire status under the CVRA based on his own say-so.[7] Accordingly, the CVRA is not legitimately implicated by Ippolito's mandamus petition, and we will not conduct review pursuant to 18 U.S.C. § 3771(d)(3).

## III.

We now turn to Request #1 and the alternative Request #3. Underlying both requests are challenges to rulings made by the District Court in the action Ippolito brought against Carpenito, White, and Stephens. Mandamus, however, is not a substitute

---

[7] Ippolito cites several cases supporting his position that a formal prosecution need not be underway in order for there to be CVRA-qualifying "crime victims." See, e.g., Doe v. United States, 817 F. Supp. 2d 1337, 1341 (S.D. Fla. Sept. 26, 2011) (holding that the CVRA can apply "before the government brings formal charges against the defendant"). But those cases are readily distinguishable from Ippolito's. In Doe, for example, the FBI, the local United States Attorney's Office, and the county prosecutor's office all had opened investigations into crimes committed by their shared target. See id. at 1339. Similarly, in Dean, supra, which concerned multiple fatalities and injuries resulting from an explosion at a BP-owned refinery, "[t]he Department of Justice investigated the possibility of federal criminal violations." 527 F.3d at 392. Furthermore, in United States v. Rubin, 558 F. Supp. 2d 411 (E.D.N.Y. June 11, 2008), there was a superseding indictment averring conduct "directly linked" to the CVRA-qualifying victims of "boiler room securities fraud." Id. at 413. The short of it all is this: In Doe, Dean, and Rubin, law enforcement officials at a minimum concluded that there was enough evidence of criminality to open investigations. By Ippolito's own admission, the same cannot be said with respect to his case.

4

for an appeal. <u>See</u> <u>Westinghouse Elec. Corp. v. Republic of Philippines</u>, 951 F.2d 1414, 1422 (3d Cir. 1991).

In some cases, particularly where the litigant is pro se, it may be appropriate to construe a mandamus petition as a notice of appeal. But Ippolito's petition clearly reflects a deliberative and purposeful choice to seek relief under the CVRA, albeit a choice predicated on an interpretation of that law that we reject above. While "pro se litigants do not have a right—constitutional, statutory, or otherwise—to receive how-to legal manuals from judges," <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 246 (3d Cir. 2013), we will at least commend to Ippolito that he give Federal Rule of Appellate Procedure 4 a close read.

IV.

For the reasons given above, the mandamus petition will be denied.