# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2011

No. 09-41238

Lyle W. Cayce
Clerk

In re: AMY UNKNOWN,

Petitioner

Consolidated with

No. 09-41254

UNITED STATES OF AMERICA,

Plaintiff – Appellee

DOYLE RANDALL PAROLINE,

Defendant – Appellee

v.

AMY UNKNOWN,

Movant – Appellant

Appeals from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, and JOLLY and GARZA, Circuit Judges.

EDITH H. JONES, Chief Judge:[1]

---

[1] Judges JOLLY and GARZA concur, except in Part II, which they consider advisory.

No. 09-41238
consolidated with
No. 09-41254

"Amy," the victim of childhood sexual abuse and of a widely broadcast set of photos depicting her abuse, has pursued restitution under the Crime Victims Rights' Act ("CVRA"), 18 U.S.C. § 3771(a)(6), against defendants who viewed her photos on the internet. Her appeal from the district court's denial of relief arrives in an unusual posture. She filed both a direct appeal under 28 U.S.C. § 1291 and a petition for a writ of mandamus under 18 U.S.C. § 3771(d)(3). A panel of this court denied mandamus. *In re Amy*, 591 F.3d 792 (5th Cir. 2009). This panel was assigned, for ease of administration, both the direct appeal and Amy's motion for panel rehearing of her mandamus petition. We need not reach the issue whether a crime victim has a right to a direct appeal, because the district court clearly and indisputably erred in grafting a proximate causation requirement onto the CVRA. Consequently, Appellant's petition for panel rehearing is granted; her petition for a writ of mandamus is likewise granted, and the case is remanded to the district court to determine the amount of restitution owed by Doyle Randall Paroline.

## I. Background

The National Center for Missing and Exploited Children ("NCMEC"), which filed a brief in the district court, reports that its analysts have identified over 35,000 images of Amy's abuse among the evidence in over 3,200 child pornography cases since 1998. NCMEC describes the content of these images as "extremely graphic."

Images of Amy were among the hundreds of images of child sexual abuse that defendant Doyle Randall Paroline possessed. Paroline pled guilty to possession of child pornography in January 2009. At sentencing, Amy filed a

No. 09-41238
consolidated with
No. 09-41254

victim impact statement and request for restitution.[2]  *See* 18 U.S.C. § 2259(a).
The latter sought $3,367,854, the cumulative cost of her lost income, attorney's
fees, and ongoing psychological care.  The government initially supported (and
formally presented) Amy's request for restitution.  NCMEC also filed a brief that
detailed the lasting impact of sexual assault and the victim's additional suffering
from the knowledge that people continue to view and circulate images of her
abuse.    Additional  evidence  before  the  district  court  included  an  expert
evaluation of Amy's psychological condition, economic report estimating her lost
earnings,  and  scholarly  articles  regarding  the  general  effects  of  child
pornography.  *United States v. Paroline*, 672 F. Supp. 2d 781, 792 (E.D. Tex.
2009).

Notwithstanding  the  heartrending  evidence,  the  district  court  denied
Amy's request for restitution.  The court held that the CVRA required Amy and
the government to prove that Paroline's possession of Amy's images—as distinct
from the thousands of other individuals who continue to possess and view the
images—proximately caused the injuries for which she sought restitution. *Id.* at
791-92.  The government, in advancing Amy's restitution claim, now accepts the
court's premise that proximate causation is required for all types of injury listed
in § 2259.

Amy immediately appealed the district court's decision.  She filed both a
direct appeal of the court's final order and a petition for writ of mandamus
authorized by the CVRA,  18 U.S.C. § 3771(d)(3).  A divided panel of this court

---

[2] Although the present lawsuit focuses on restitution, the CVRA guarantees a number
of other rights as well.  Among these are (1) reasonable protection from the accused, (2) notice
of any court or parole proceedings involving the accused, (3) attendance at such proceedings,
(4) an opportunity to be heard at proceedings involving release, plea, sentencing or parole,
(5) communication  with  the  government's  attorney  in  the  case  involving  the  victim,
(6) avoidance of delay, and (7) "[t]he right to be treated with fairness and with respect for the
victim's dignity and privacy."  18 U.S.C. § 3771(a).

No. 09-41238
consolidated with
No. 09-41254

refused the mandamus request, upholding the district court's conclusion that proximate causation permeates § 2259. *In re Amy*, 591 F.3d 792, 794-95 (5th Cir. 2009) ("Although this circuit has not yet construed the proximate cause requirement under Section 2259, it is neither clear nor indisputable that Amy's contentions regarding the statute are correct."). In response, Amy has sought both panel and en banc rehearing of her mandamus petition. Because her direct appeal was assigned to this panel, this panel was also assigned for purposes of rehearing the petition for mandamus.[3]

## II. Jurisdiction

The first question before this court is what sort of jurisdiction we have to review the district court's order. Given our conclusion that the writ of mandamus should be granted, we need not resolve the problem, posed by divided sister circuit opinions, whether the CVRA allows a victim to bring a direct appeal. The difficulty of this issue ought to be explained, however, for the benefit of future panels.

The CVRA provides that: "If the district court denies the relief sought, the movant [victim] may petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). As to the government, "In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates." 18 U.S.C. § 3771(d)(4). The CVRA does not state that victims' sole avenue for review is the writ of mandamus, nor does it authorize the government alone to

---

[3] This court heard oral arguments in Amy's direct appeal on November 4, 2010. The decision to hear arguments did not commit the court to a conclusion on the availability of direct appeal. We remain the rehearing panel for purposes of Amy's mandamus petition. *See United States v. Jackson*, 559 F.3d 368 (5th Cir. 2009) (conducting panel rehearing of the decision issued by a differently composed prior panel in *United States v. Jackson*, 285 F. App'x. 149 (5th Cir. 2008)).

No. 09-41238
consolidated with
No. 09-41254

bring a direct appeal.[4]  In any event, 28 U.S.C. § 1291 generally authorizes direct appeal by parties aggrieved by final district court judgments.

The government moved to dismiss Amy's direct appeal filed under § 1291, contending that mandamus is her exclusive appellate vehicle.  The CVRA's express provisions confirm this proposition, according to the government and Paroline, abetted by the interpretive presumption that Congress has "legislated against the background of our traditional legal concepts . . . ."  *United States v. United States Gypsum Co.*, 438 U.S. 422, 437, 98 S. Ct. 2864 (1978).  Prominent among the relevant legal traditions is that non-parties may not file appeals.  The Supreme Court has long recognized "[t]he rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment . . . ."  *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586 (1988) (citing *United States ex rel. Louisiana v. Jack*, 244 U.S. 397, 402, 37 S. Ct. 605 (1917)).  Crime victims have not been recognized as parties, and the Federal Rules of Criminal Procedure do not allow them to intervene as parties to a prosecution.  Circuit courts have applied this rule in the context of restitution.  Under the Victim and Witness Protection Act (VWPA), the CVRA's predecessor that made restitution an option rather than mandatory, the Ninth Circuit held that "[n]owhere in the statute does Congress suggest that the VWPA was intended to provide victims with a private remedy to sue or appeal restitution decisions . . . ."  *United States*

---

[4] A related argument concerns the collateral order doctrine.  The Supreme Court has recently reiterated the doctrine's rare applicability. *Mohawk Indus., Inc. v. Carpenter*, ---- U.S. ----, 130 S. Ct. 599 (2009).  A condition for the collateral order doctrine is that the order at issue be "effectively unreviewable on appeal."  *Id.* at 604.  In the present case, the government argues that its ability to appeal a restitution order defeats this condition; Amy contends that such an order remains effectively unreviewable *as to her*.  We present this controversy but need not resolve it.

No. 09-41238
consolidated with
No. 09-41254

*v. Mindel*, 80 F.3d 394, 397 (9th Cir. 1996).[5]   The government contends that decades of experience, a general prohibition on non-party appeals, and its application in the context of victims' rights stand against  Amy's hope to invoke § 1291 to appeal the denial of restitution.

Moreover, a pair of recent decisions expressly denies direct appeals under the CVRA.  *See United States v. Hunter*, 548 F.3d 1308 (10th Cir. 2008), *United States v. Aguirre-Gonzalez*, 597 F.3d 46 (1st Cir. 2010).  *Hunter* anchored its statutory interpretation in three provisions of the CVRA: the authorization of mandamus review for victims, the government's ability to bring a direct appeal on a victim's behalf, and the statement that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id*. at 1315-16 (quoting 18 U.S.C. § 3771(d)(5)).  The first two provisions support *Hunter*'s conclusion by simple negative implication. The last of them, according to the court, implies that affording victims full appellate rights could compromise the government's ability to enter plea agreements because a victim's appeal could re-open the negotiated judgment, removing the certainty that motivates defendants to settle.  *Id*.  *Hunter* also suggests that precedent from other circuits supports its conclusion.  It cites two decisions that applied traditional abuse-of-discretion standards while professing to conduct mandamus review.  *Id*. at 1315 n.5 (citing *Kenna v. U.S. Dist. Court*,

---

[5] The Ninth Circuit was not alone in its interpretation of the VWPA. *See United States v. Palma*, 760 F.2d 475, 479 (3d Cir. 1985) ("the victim . . . is not made a party to the sentencing proceeding"), *United States v. Brown*, 744 F.2d 905, 909-10 (2d Cir. 1984) ("the victim is not a party to the sentencing hearing . . . .   Neither can he appeal a determination he deems inadequate."), *United States v. Franklin*, 792 F.2d 998, 999-1000 (11th Cir. 1986) ("no statute . . . give[s] us the authority to entertain an appeal by a victim, such as appellant, who was not a party to the sentencing proceeding in the district court."), *United States v. Kelley*, 997 F.2d 806, 807 (10th Cir. 1993) ("We . . . hold that [the victim] has no standing to prosecute this appeal.").

No. 09-41238
consolidated with
No. 09-41254

435 F.3d 1011, 1017 (9th Cir. 2006), *In re W.R. Huff Asset Management Co., LLC*, 409 F.3d 555, 562-63 (2d Cir. 2005)). By "disguising" ordinary appellate review as mandamus review in § 3771(d)(3) petitions, these decisions support the conclusion that victims have no right to a direct appeal: "To hold otherwise would effectively grant victims two opportunities to appeal, both of which would be subject to identical appellate standards of review—a clearly inefficient and illogical scheme." *Id.*[6]

Amy asserts that the propriety of her direct appeal is not expressly foreclosed by the CVRA and actually finds support in pre-CVRA authorities—as Congress is presumed to have been aware—as well as recent caselaw. Before the passage of the CVRA, this court heard appeals from non-parties with a direct interest in aspects of criminal prosecutions. *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1974) (holding that unindicted co-conspirators had standing to challenge passages in an indictment); *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983) (allowing newspaper to appeal order restricting access to court hearing). A rape victim was authorized in *Doe v. United States*, 666 F.2d 43, 46 (4th Cir. 1981), to appeal the trial court's ruling on a rape shield law. Most important, the Third Circuit held, albeit perfunctorily, that "We have appellate jurisdiction pursuant to 28 U.S.C. § 1291" to hear the appeal of a purported victim seeking restitution under the VWPA. *United States v. Kones*, 77 F.3d 66,

---

[6] If *Hunter* is correct that courts are cloaking their ordinary review in mandamus language, that fact suggests unease with denying victims a direct appeal, the very conclusion *Hunter* advances. As discussed below, this circuit insists on a single mandamus standard. As a corollary, this court can neither follow nor condone the shrouded direct review in *Huff* and *Kenna*. *See infra* Part III. The *Hunter* opinion also overlooks precedent that favors direct appeal. Neither *Hunter* nor its successor, *In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008), discusses the Sixth Circuit's decision in *United States v. Perry*, 360 F.3d 519 (6th Cir. 2004). *Perry* distinguished the entire corpus of VWPA precedent for the fact that restitution was not mandatory under that statute, but *Hunter* cites no fewer than three such cases in support of its holding.

68 (3rd Cir. 1996).  Based on the conflicting pre-CVRA cases cited by Amy and the government, one may legitimately wonder <u>which</u> legal landscape Congress is presumed to have been viewing when it crafted the CVRA.

The Third Circuit also ruled, in a split panel decision issued while the CVRA was under consideration in Congress, that a crime victim could appeal pursuant to § 1291 the district court's method of enforcing the restitution order. *United States v. Perry*, 360 F.3d 519 (3rd Cir. 2004).[7]

Finally, post-CVRA, the Sixth Circuit offered indirect support for Amy's position when it allowed a direct appeal under the CVRA.  *See In re Siler*, 571 F.3d 604 (6th Cir. 2009).  Although the events in *Siler* began with a criminal investigation, the lawsuit at issue was a civil action against the police for violations of 42 U.S.C. § 1983.  The plaintiffs hoped to use a provision of the CVRA to gain access to the defendants' Presentence Reports (PSRs), which they believed contained evidence that would support their case.  *Id.* at 607-08.  In accepting the appeal, however, the Sixth Circuit noted that "the issue now before us is unrelated to the [criminal] case against the defendants."[8]  *Id.* at 606-07.

---

[7] Amy argues that statutory developments between the VWPA and the CVRA have nullified pre-CVRA holdings that victims have no independent rights in criminal prosecutions. This interpretation of the shift from "may," 18 U.S.C. § 3663(a)(1)(A), to "shall," 18 U.S.C. § 3663A(a)(1), has persuaded at least one court.  *Perry*, 360 F.3d at 531 ("under the VWPA, a court did not have to award restitution . . . .  Thus, particular features of the VWPA scheme—features absent from the [CVRA]—explain the decisions that deny standing to appeal a VWPA restitution order.").

[8] The Tenth Circuit has attempted to substantiate the distinction between victims' rights in civil and criminal contexts.  *Hunter*, 548 F.3d at 1312.  "Civil cases," that court reasoned, "often implicate the pecuniary rights of non-parties . . . .  Criminal trials, of the other hand, place an individual citizen against the United States government."  *Id.*  To be fair, although *Hunter* was a CVRA case, it addressed the entire panoply of victims' rights contained in the statute.  In the specific context of restitution, *Hunter*'s distinction could not be less accurate.  A restitution order implicates only the pecuniary interests of a criminal defendant, and the dispute over how much restitution is due occurs between a criminal and his victim—in fact, the victim's ability to pursue this dispute without government involvement is precisely

No. 09-41238
consolidated with
No. 09-41254

To summarize briefly the arguments and authorities cited by the "parties" is not to resolve whether a § 1291 appeal is available to a victim seeking relief for any of her rights, including restitution, under the CVRA. Resolution is difficult because the cases employ conflicting reasoning. *Perry*, which involved a dispute among victims who were to share an award, focused on the victims' property rights in their restitution. 360 F.3d at 530-31. *Kones* and *Hunter* concerned denials of restitution, but the former permitted appeal under the optional-restitution VWPA, while the latter denied appeal under the mandatory-restitution CVRA. The cases also ignore their predecessors: *Perry* fails to acknowledge *Kones*, while *Hunter* does not cite either *Perry* or *Kones*. Federal victim rights legislation has steadily evolved toward expanding the formal rights and role of victims in the prosecutorial process. Nevertheless, when Congress as recently as the 1980s failed to offer any appellate rights to review restitution orders, which path did it more likely take when creating appellate redress in the CVRA? Did it <u>add</u> the mandamus vehicle to a victim's pre-existing right to appeal under § 1291? Or did it craft "mandamus" in lieu of a non-existent direct appeal right for non-parties? If the latter course was chosen, did Congress render to victims a mere formality, given the traditionally narrow scope of mandamus relief, or did it apply that term to a more substantial vehicle for redress of victims' grievances? We need not resolve the uncertainties, because our analysis leads to the conclusion that, even under the narrow standard of traditional mandamus review, the district court's judgment cannot stand. This conclusion would perforce favor Amy if a § 1291 de novo appellate standard applied.

---

the issue in this case.

9

No. 09-41238
consolidated with
No. 09-41254

### III.  Standard of Review

When a panel rehearing is granted, the standard of review is the same one that applied at the original hearing.  *See, e.g., Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 422 (5th Cir. 2008).  This court evaluates a petition for writ of mandamus under the CVRA according to the standard announced in *In re Dean*, 527 F.3d 391 (5th Cir. 2008).  *Dean* held that mandamus is appropriate "only if (1) the petitioner has no other adequate means to attain the desired relief; (2) the petitioner has demonstrated a right to the issuance of a writ that is clear and indisputable; and (3) the issuing court . . . is satisfied that the writ is appropriate under the circumstances."  *Id.* at 394 (internal quotations omitted).  In announcing the test for mandamus under the CVRA, the *Dean* decision refers to this court's holding in *In re United States*, 397 F.3d 274 (5th Cir. 2005), as well as the Supreme Court's decision in *Cheney v. United States District Court*, 542 U.S. 367, 124 S. Ct. 2576 (2004), neither of which concerns the CVRA or restitution.  By relying on general mandamus precedent, *In re Dean* confirms that a single mandamus standard reigns in the Fifth Circuit, regardless of the context in which the petition arises.[9]

---

[9] We pause to note, as part of the jurisdictional conundrum, that our sister circuits are far from united in the standard to be applied.  At least two circuits have applied lower standards of review when faced with a mandamus petition under the CVRA.  *See Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) ("we must issue the writ whenever we find that the district court's order reflects an abuse of discretion or legal error"), *In re W.R. Huff Asset Management Co., LLC*, 409 F.3d 555, 562-63 (2d Cir. 2005) (invoking § 3771(d)(3), the mandamus review provision, but concluding that "the district court's determination under the CVRA should be reviewed for abuse of discretion.").  These standards appear to be more amenable to reversing the district court than the general mandamus standard.  *Cf. In re The City of New York*, 607 F.3d 923, 928-29 (2d Cir. 2010) (applying *Cheney*'s three-part test), *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Cheney* and applying an equivalent five-part test from Ninth Circuit precedent).  The Tenth Circuit, however, preceded this court in applying the traditional mandamus standard to a victim's appeal under the CVRA.  *See In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008).  As the Tenth Circuit explained, "[m]andamus is a well worn term of art in our common law tradition."  *Id.* at 1127.  Moreover,

10

No. 09-41238
consolidated with
No. 09-41254

## IV.  Discussion

As the Supreme Court has noted, the "hurdles" limiting use of mandamus, "however demanding, are not insuperable." *Cheney*, 542 U.S. at 381. This court's initial denial of Amy's petition for a writ of mandamus focused on the second of the three *Cheney* factors—*i.e.*, whether Amy's right to restitution is "clear and indisputable." The other two factors played no part in the denial. As to the first factor, the court cited the Tenth Circuit's *Hunter* decision in holding that "the petitioner likely has no other means for obtaining review of the district court's decision not to order restitution." *In re Amy*, 591 F.3d at 793. Based on the preceding discussion, we can affirm this conclusion without endorsing *Hunter*'s holding that a victim has no right to direct appeal.

Likewise, the third factor in *Cheney*—whether the writ is appropriate under the circumstances—favors Amy's petition. Whatever Congress envisioned regarding a victim's right to direct appeal, the CVRA expressly authorizes mandamus under these circumstances. 18 U.S.C. § 3771(d)(3).

The remaining question is whether Amy has a "clear and indisputable" right to restitution. Given more time to ponder and research, we have reconsidered this question. Courts are required to award victims of child sex abuse "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). In this context,

> 'full amount of the victim's losses' includes any costs incurred by the victim for--
>
> (A)     medical services relating to physical, psychiatric, or psychological care;

---

"[i]t is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v. United States*, 527 U.S. 1, 21, 119 S. Ct. 1827, 1840 (1999).

11

No. 09-41238
consolidated with
No. 09-41254

(B)     physical and occupational therapy or rehabilitation;

(C)     necessary transportation, temporary housing, and child care expenses;

(D)     lost income;

(E)     attorneys' fees, as well as other costs incurred; and

(F)     any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

The district court denied Amy's request for restitution because the government failed to prove "what losses, if any, were proximately caused by *Paroline's possession* of Amy's two pornographic images . . . ."   *United States v. Paroline*, 672 F. Supp. 2d 781, 783 (E.D. Tex. 2009) (emphasis added).   It reasoned that the statute, precedent, and compliance with the Eighth Amendment compel the conclusion that each category of loss in § 2259(b)(3) includes the element of proximate causation, even though the statute confines that requirement to the "catchall" provision, subsection F.   This conclusion is clearly and indisputably wrong.

The structure and language of § 2259(b)(3) impose a proximate causation requirement only on miscellaneous "other losses" for which a victim seeks restitution.   As a general proposition, it makes sense that Congress would impose an additional restriction on the catchall category of "other losses" that does not apply to the defined categories.   By construction, Congress knew the kinds of expenses necessary for restitution under subsections A through E; equally definitionally, it could not anticipate what victims would propose under the open-ended subsection F.

Comparing the language of § 2259 with other restitution statutes affirms the conclusion that proximate causation applies only to the catchall category of harms.   Under the VWPA, a victim is "a person *directly and proximately* harmed as a result of the commission of an offense. . . ."   18 U.S.C. § 3663A(a)(2)

12

No. 09-41238
consolidated with
No. 09-41254

(emphasis added). In contrast, § 2259, enacted 14 years later as part of the MVRA, defines a victim as "the individual harmed as *a result of* a commission of a crime . . . ." 18 U.S.C. § 2259(c) (emphasis added).[10] Comparing these statutes reveals that Congress abandoned the proximate causation language that would have reached all categories of harm via the definition of a victim. This change is consistent with the reasons for enacting a second generation of restitution statutes. *See, e.g., Unites States v. Ekanem*, 383 F.3d 40, 44 (2d Cir. 2004) (noting "the intent and purpose of the MVRA to expand, rather than limit, the restitution remedy."), *United States v. Perry*, 360 F.3d 519, 524 (6th Cir. 2004) ("The new law unquestionably reflects a dramatically more 'pro-victim' congressional attitude . . . ."). The evolution in victims' rights statutes demonstrates Congress's choice to abandon a global requirement of proximate causation.

In applying proximate causation beyond the catchall, the district court cited two Supreme Court cases interpreting statutory lists. *Paroline*, 672 F. Supp. 2d at 788 (citing *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 40 S. Ct. 516 (1920), *Fed. Mar. Comm'n v. Seatrain Line, Inc.*, 411 U.S. 726, 93 S. Ct. 1773 (1973)). In *Porto Rico Railway*, the Supreme Court stated that "When several words are followed by a clause which is applicable as much to the

---

[10] The CVRA contains a definition of "crime victim" that parallels the VWPA and incorporates proximate causation: "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e). We focus on the MVRA definition, however, because Amy's claim to restitution rests on that statute. The district court appreciated this fact and therefore turned to a provision of the MVRA to find a proximate causation requirement, *viz.* § 2259(b)(3). To evaluate the district court's interpretation, we look to other sections of the same statute for guidance. The parties do not challenge whether Amy is a victim. Nevertheless, the MVRA's internal definition of victim is probative of the meaning of § 2259(b)(3).

No. 09-41238
consolidated with
No. 09-41254

first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Id.* at 348.

But there are lists, and then there are other lists. Here, the statute does not present the types of recoverable costs in a series, separated by commas. Instead, it begins a sentence ("'full amount of the victim's losses' includes any costs incurred by the victim for--") and then lists six different endings for that sentence. From the double-dash that opens the list to the semicolons that separate each of its elements, the grammatical structure of § 2259(b)(3) is unlike the statute in *Porto Rico Railway*. The latter was a blurry composite of lists, separated by commas and without any numbering or introductory punctuation.[11] Grammar alone counsels against applying the rule of *Porto Rico Railway* to the current statute.

Even if the interpretive approach of *Porto Rico Railway* applied here, so would the Court's comment that the statute in question "manifests a general purpose . . . [and i]f the application of the cause were doubtful, we should so construe the provision as to effectuate the general purpose of Congress." *Id.* In the case of § 2259, the statute manifests a congressional purpose to award broad restitution. *See United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) ("Congress [in § 2259] mandated broad restitution for a minor victim . . . ."), *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) ("Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."). In light of the recognized purpose for which Congress crafted the list in § 2259(b)(3), a

---

[11] The relevant provision stated: "Said District Court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico . . . ." *Porto Rico Ry.*, 253 U.S. at 346.

14

more faithful application of *Porto Rico Railway* would confine the proximate causation requirement to the catchall category of subsection F.

The district court relied on another Supreme Court case addressing an interpretive question that is the inverse of the one here. *Fed. Mar. Comm'n v. Seatrain Line, Inc.*, 411 U.S. 726, 93 S. Ct. 1773 (1973). The statute in *Seatrain* included a seven-category list like the one in § 2259(b)(3). All but one of the categories referred to business relationships that were ongoing. The remaining category was ambiguous, and the Federal Maritime Commission sought to use it to regulate a one-time event. *Id.* at 732-33. The question before the Court, therefore, was unlike the present case: whether to apply a condition present in all but one category to the sole outlier (as opposed to applying a restriction present in only one category to all of the others, as the district court did here). The Supreme Court resolved this question by looking to all six of the other categories and following their example: "of the seven categories, six are expressly limited to ongoing arrangements . . . ." 733-34. The Court found it especially significant that the catchall category shared the restriction. *Id.* at 734.

Here, the district court seizes on *Seatrain*'s comments about catchall categories to justify a proximate causation requirement, which appears in the catchall, subsection F. *Paroline,* 672 F. Supp. 2d at 788. This is a misapplication of *Seatrain*. In *Seatrain*, the special role of a catchall category was not determinative because the catchall imposed the same condition as the other uncontested categories. It is just as likely that the Court's other rationale—majority rule among the categories—controlled the outcome. Moreover, the treatise from which the Court drew its interpretation of catchalls includes the following restriction: "But this is so, only if the result is consistent with the legislative intent . . . . The rule will not be applied where there is 'no ambiguity,' or to thwart the legislative intent . . . ." 2 J. G. SUTHERLAND,

No. 09-41238
consolidated with
No. 09-41254

STATUTES AND STATUTORY CONSTRUCTION § 4908 (3d ed. 1943).  The Supreme
Court understood this restriction.  As in *Porto Rico Railway*, the Court in
*Seatrain* took its cues from "the statutory scheme" and what it says about
congressional intent.  411 U.S. at 734.  As illustrated in the citations above,
congressional intent is no mystery in the context of § 2259.  Had the district
court adhered more closely to the precedent it cited, it would have reached the
opposite conclusion.

Restricting the "proximate result" language to the catchall category in
which it appears does not open the door to limitless restitution.  The statute
itself includes a general causation requirement in its definition of a victim: "For
purposes of this section, the term 'victim' means the individual harmed *as a
result* of a commission of a crime under this chapter . . . ."  18 U.S.C. § 2259(c)
(emphasis added).  The district court displayed due care in analyzing whether
Amy is a victim of  Paroline's crime of possessing—but not creating—images of
her sexual assault.  *Paroline*, 672 F. Supp. 2d at 785-87.  The finding that Amy
is a victim under § 2259(c) rests on the Supreme Court's reasoning in *New York
v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348 (1982) as well as this court's holding in
*United States v. Norris*, 159 F.3d 926 (5th Cir. 1998).[12]  In *Norris* this court

---

[12] The causation reasoning in *Norris* bears extended reproduction:

> The consumer, or end recipient, of pornographic materials may be
> considered to be causing the children depicted in those materials to suffer as a
> result of his actions in at least three ways.
> First, the simple fact that the images have been disseminated
> perpetuates the abuse initiated by the producer of the materials. . . .
> Second, the mere existence of child pornography represents an invasion
> of the privacy of the child depicted. Both the Supreme Court and Congress have
> explicitly acknowledged that the child victims of child pornography are directly
> harmed by this despicable intrusion on the lives of the young . . . .
> Third, the consumer of child pornography instigates the original
> production of child pornography by providing an economic motive for creating
> and distributing the materials. . . .
> Any of these effects, stemming directly from a consumer's receipt of or

No. 09-41238
consolidated with
No. 09-41254

rejected the argument that possessors of child pornography are only an "indirect or secondary" cause of the victim's harm. 159 F.3d at 928-29. Given the statute's built-in causation requirement and the volume of causation evidence in the context of child pornography, fears over excessive punishment are misplaced. We therefore do not share the district court's concern that rejecting a proximate causation requirement would place § 2259 in danger of offending the Eighth Amendment. *See Paroline*, 672 F. Supp. 2d at 788 n.9.

A second reason to doubt that Paroline will pay an unconstitutional price for his crime is the possibility that he can seek contribution from other persons who possess Amy's images. Although the statute holds a criminal responsible for "the full amount of the victim's losses," 18 U.S.C. § 2259(b)(1), it instructs the court to enforce the restitution award "in accordance with section 3664," 18 U.S.C. § 2259(b)(2). Section 3664 states that the court may enforce a restitution order "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii). Among these is joint and several liability. Holding wrongdoers jointly and severally liable is no innovation. *See, e.g.,* 42 U.S.C. § 9607(a) (CERCLA). It will, however, enable Paroline to distribute "the full amount of the victim's losses" across other possessors of Amy's images. Among its virtues, joint and several liability shifts the chore of seeking contribution to the person who perpetrated the harm rather than its innocent recipient.

This court offers no opinion on the amount of restitution due in Amy's particular circumstances. The district court has conducted two evidentiary hearings already. It is best qualified to determine Amy's total harm and the fraction due to Paroline's crime.

_____

willingness to receive child pornography, would amply justify the conclusion
that a child depicted in the pornographic images was a "victim" of that crime.
159 F.3d at 929-30.

17

No. 09-41238
consolidated with
No. 09-41254

## V. Conclusion

Incorporating a proximate causation requirement where none exists is a clear and indisputable error. Amy is entitled to receive restitution under the CVRA. We therefore GRANT Amy's petition for panel rehearing and likewise GRANT her petition for a writ of mandamus. Because the district court did not quantify the amount of restitution to which Amy is entitled or the fraction attributable to Paroline, the case is REMANDED for resolution of that issue.